FREELAND T. BARNEY, LESTER S. HUBBARD, AND WILLIAM DURBIN, Respondents, *v.* SAMUEL K. WORTHINGTON, Appellant.

*Letter of Credit—Acceptance of Draft—Extrinsic evidence—Form of Complaint.*

Extrinsic evidence is competent to enable the Court to understand the purpose for which a draft was made, and to interpret and apply its language.

Where the Defendant enters into an arrangement with other parties to the effect that a draft is to be drawn upon him on time, and is to be discounted and the avails thereof paid over to him, and for that purpose writes a letter of credit to be used in procuring the discount, he is to be deemed the borrower, and is liable for the proceeds thereof coming to his hand, independent of the question of acceptance.

APPEAL from the Superior Court of the City of Buffalo.

The action was for the recovery of the amount of a draft on the Defendant, made by Burton & Hubbard, for the sum of $3,000, which the Plaintiffs discounted, as they claim, on the faith of a letter written by the Defendant, who received the proceeds of the discount, but refused to accept the bill.

The complaint contained three counts; two of them upon a promise to accept and pay the draft, and the third for money lent and advanced at the Defendant's request. The cause was tried before Judge Verplanck, without a jury.

The following, among other facts, were proved on the trial: The firm of Burton & Hubbard was composed of Marshall Burton and Lucius F. Hubbard. They were in the produce and shipping business in the State of Ohio. They were in the habit of consigning their produce to the Defendant, a commission merchant at Buffalo, and of drawing drafts against it, which he had always accepted. He had made advances to them, prior to the date of the draft, to an amount several thousand dollars in excess of the estimated value of the property he had received as their consignee; but this fact was unknown to the Plaintiffs.

On the 14th November, 1860, two days before the date of the draft, Lucius F. Hubbard, one of the firm, was at the Defendant's

office in Buffalo. The Defendant wished them (Burton & Hubbard) to furnish him some money. He wanted them to raise some money for him to help meet his acceptances. Hubbard replied that it would be impossible without his assistance. The Defendant asked him if he could raise some money at the West. Hubbard said they probably could by making drafts on him, payable in New York; and if the Defendant thought it best, he would write to his partner to make such drafts. The Defendant told him he had better do so. Hubbard said that, in order to raise money in that way, it might be necessary to have his acceptance or letter of credit, to show that he would accept the paper. The Defendant replied that this would not be necessary ; that he would write to Mr. Burton and arrange all that. Hubbard suggested that the paper should be made payable at Ketchum, Son & Co.'s, or at the Union Bank. The Defendant left it to their preference, and remarked that he might be glad to have them raise, in that way, eight or ten thousand dollars, if they could do so ; and he directed them to make the drafts for $2,500 or $3,000 at first, and to send the proceeds to him.

The Defendant afterwards told Hubbard that he had written to Burton to make drafts on him, payable in New York, and raise money on them. The letter was as follows :

"BUFFALO, *November* 14, 1860.

"M. BURTON, Esq.:

"DEAR SIR—Mr. H. has written you the state of things here. We have shipped all we could, and sold the balance. Now, in order to get along, and put up the necessary margins here which New York houses will require, it will be necessary to have more ready funds. Our banks are tightening up, and throw off all the customers they can. I have given them the canal bills, without consignees as yet, and, am waiting to hear from W., and R. H. & Co.

" *You will make your draft for $3,000, or two drafts for $2,500 each, on as long time as you can, and forward the funds as early as you can, as I must on the 18th arrange a portion of the drafts here.*

" I hope markets will improve and pay well for the expense and trouble we are to in getting this grain forwarded.   Don't delay in arranging and remitting.

" Yours truly,

" S. K. Worthington."

It was proved that the drafts or acceptances referred to in the letter, which the Defendant had to meet, were personal papers of his own, with which Burton and Hubbard had nothing to do, and that there were no outstanding drafts by them ; that the last of his acceptances for them had been paid by him twelve days before this letter was written.

The Defendant, who was sworn on the trial, admitted that his dealings were with the firm ; that he never had any individual transactions with Burton, and that there was no arrangement for his making an individual draft upon him.

On receiving the letter of the Defendant, with one from Hubbard, Burton went on the 16th of November to the Plaintiffs, who were bankers at Sandusky; made a draft, in the name of his firm, on the Defendant for $3,000, payable sixty days after date at the office of Ketchum, Son & Co., New York; communicated to them the contents of the Defendant's letter, and the fact that the proceeds were to be remitted to him, and they thereupon discounted the draft on the faith of the Defendant's responsibility.   The Defendant admits that he received the proceeds, and that he supposed them to be the avails of this draft at the time he received them.

Specific objections were taken to the introduction of the letter and the draft, and to the admission of parol proof of the antecedent and surrounding circumstances ; and exceptions were duly taken to the several rulings of the Court.

The Judge found, in substance, the following facts : On the 14th of November, 1860, the Defendant, in writing, directed and empowered Burton & Hubbard to draw upon him the draft in question ; and such direction and authority were intended by him as a letter of credit to enable them to procure the draft to be discounted.   On the 16th of November Burton & Hubbard pro-

cured it to be discounted ; and the discount was made on the faith of such direction, authority, and letter of credit. The proceeds were paid to the drawers, and remitted by them to the Defendant. On due presentation of the draft he refused to accept it, and he afterwards refused to pay it at maturity. The Judge gave judgment in favor of the Plaintiffs for $3,113.75, the amount of the draft, with interest.

The judgment was affirmed on appeal to the General Term.

*John Ganson* for Appellant.

*John S. Talcott* for Respondents.

PORTER, J.—The letter of the Defendant, though addressed to the partner who happened to be at home, was evidently intended to authorize a draft by the firm. It is to be read in the light of the surrounding circumstances, proof of which was properly admitted to aid the Court in ascertaining the purpose of the paper, and in applying and interpreting its language (Hutchins *v.* Hebbard, 34 New York, 24; Agawam Bank *v.* Strever, 18 id. 509 ; Blossom *v.* Griffin, 3 Kernan, 569 ; French *v.* Carhart, 1 Comstock, 102).

The Defendant was substantially the borrower. Burton & Hubbard were indebted to him on an open and current account, but they had no available means of payment. His own paper was maturing, and he wished them to borrow in Ohio, for his use, what he could not obtain at home, in the then stringent condition of the money market. They told him they could not obtain the loan without the aid of his credit ; and he accordingly furnished them with a written authority to make the draft, for the precise purpose of giving credit to the paper, of which he was to receive the proceeds.

The Judge seems to have been of opinion that as there was no agreement, *in terms*, to honor the draft, the transaction did not amount to an unconditional promise of acceptance within the meaning of the statute. He held, however, that the Defendant was responsible, as upon *a letter of credit*, on the faith of which the Plaintiffs made the discount. In a rigid and technical sense that name may not be strictly appropriate; and yet, in view of

the intention with which the letter was written, and the purpose for which it was to be used, the designation can scarcely be called a misnomer. In its substantial office, the writing was really a letter of credit; but it was also something more. In view of the circumstances under which it was given, the Defendant's unqualified authority to draw on him for the amount was equivalent to an unconditional promise to pay the draft. The absence of technical promissory words is of no practical moment, where the language employed is such as to raise an imperative legal obligation (Bank of Michigan *v.* Ely, 17 Wendell, 508, 512; Ulster County Bank *v.* McFarlan, 5 Hill, 432).

The objection that the complaint is insufficient to uphold the judgment is one which we cannot sustain. It is based on the statutory provision that a written and unconditional promise to accept a bill, before it is drawn, shall be deemed an actual acceptance in favor of a party purchasing on the faith of such an engagement. It was not designed to prescribe a form of pleading, but to furnish a rule of judgment. Under our present system a party is at liberty in his complaint to state the actual facts which raise a cause of action in his favor. In the present case the Plaintiffs alleged the promise made by the Defendant, and his refusal to perform it; they proved the truth of what they averred; and they deduce their title to judgment through a statute which makes these facts conclusive in support of their legal right.

The judgment should be affirmed.

All the Judges concurring,

Judgment affirmed.