## COMMONWEALTH *vs.* WOODBURY CURTIS.

Confessions of a prisoner in arrest on a criminal prosecution, made to the officer who has him in custody and has told him that "as a general thing it is better for a man who is guilty to plead guilty, for he gets a. lighter sentence," are inadmissible in evidence against the prisoner, at the trial, although the officer's remark related to pleading guilty on trial and not to making a confession *in pais*, and although the prisoner began the conversation and solicited the advice of the officer, who first told him that he " did not wish to advise him one way or another." .

On the trial of an indictment for adultery, the defendant and his alleged paramour, having testified in his behalf that they never had criminal intercourse with one another, may be asked, on cross-examination, concerning their acts of mutual intimacy both prior and subsequent to the time of the act alleged, although during part of the period covered by the inquiry they lived in other states; and the woman may be asked whether she was not delivered of a full grown bastard child four months after the time of the act alleged, and whether she did not live in the same house with the defendant nine months before the child's birth, and also whether at and about and after the time of the act alleged she did not wish it to be understood that she was the defendant's wife, and did not say that she and the defendant were married and had been so for several years.

INDICTMENT, presented January 1, 1867, for adultery with one Susan Edgerly at Haverhill on August 1, 1866.

At the trial in the superior court, before *Brigham*, J., the government introduced evidence tending to show that on May 3, 1854, the defendant was married at Portsmouth in New. Hampshire to Almira S. Edgerly, who was living at the time of the finding of the indictment; that in July 1866 he hired and began to occupy a house in Haverhill, and that, immediately afterwards, Susan Edgerly, a younger sister of his wife, came to it, and resided there with him until his arrest in this prosecution ; that his wife at no time resided in that house, and during part of the time of its occupation by the defendant no one lived there but himself and Susan Edgerly ; that during their residence thus together the defendant spoke of her as his wife, and in November 1866 procured a physician to attend her at her confinement in

the house, where she was delivered of a full grown bastard child. There was no evidence that she and the defendant had ever been together in Massachusetts prior to July 1866.

One of the witnesses for the government, John Tuck, a constable, who made the arrest, testified that the defendant, while in his custody, asked whether he would advise him to plead guilty; that he replied that he did not wish to advise him one way or another, for fear it might not suit him; and that the defendant then said " that it was hard for him to be carried off, and leave his little girl only about eight weeks old; that he did not deny that they had lived together as husband and wife until the birth of this child, but that they could not prove that he had slept with her since; that he should live with her as long as he had his liberty; that he wanted to get good counsel to consult with, and thought that he should plead not guilty in the police court, and guilty in the next court, and wished that his counsel should consult with the district attorney to get his sentence as light as possible."

On cross-examination this witness testified that he said to the defendant " that as a general thing it was better for a man who was guilty to plead guilty, for he got a lighter sentence;" and that he had no doubt that the point in the conversation at which he made this remark was immediately after his remark that he did not wish to advise the defendant one way or another for fear it might not suit him.

The defendant was a witness in his own behalf, and testified that he never committed adultery with Susan Edgerly; that he moved to Haverhill in July, and she came there soon afterwards; and that he never told Tuck that he had lived with her as husband and wife before the birth of the child. On cross-examination the district attorney was allowed to ask him concerning his intimacy with her before they lived together at Haverhill, and he testified, under objection, that he once went with her from Portsmouth, New Hampshire, to Portland, Maine, and there introduced her as his wife and slept in the same room with her at the inn; that they were arrested at Brunswick, Maine, and " the matter was settled up."

Susan Edgerly was called as a witness for the defendant, and testified that she had never had criminal intercourse with him; that in the house at Haverhill she slept down stairs and he slept up stairs.

On cross-examination she also was asked by the district attorney concerning her intimacy with the defendant before they lived together at Haverhill, and testified, under objection, among other things, that she was delivered of a full grown bastard child in November 1866, and the defendant was not its father; that she boarded in the defendant's family in Portsmouth in February 1866, while his wife was cohabiting with him; that she once went to Portland with the defendant without the knowledge of her friends, and was in the same inn with him two weeks; that on her coming to Haverhill in July 1866 the defendant met her at the railroad station and took her to the house there; that he provided the house with furniture and subsistence; that she " never disputed with any person that she and the defendant were living together as wife and husband," but might have told a certain person that she and the defendant were married, and had been so for four or five years; and that she did wish it to be understood in Haverhill, while she resided in the house there, that she was the defendant's wife.

No evidence was offered to contradict the testimony of the defendant or of Susan Edgerly as to their acts of intimacy prior to their residence together in Haverhill, nor was the district attorney allowed to argue to the jury that such prior acts tended to prove " an adulterous disposition " or acts of adultery at Haverhill; but he was allowed to argue, and the judge instructed the jury, " that they might consider the evidence of such acts and of the relations existing between the defendant and Susan Edgerly as disclosed on their cross-examination, in determining whether the explanation of their motives in coming to Haverhill and their mode of residence together there was a reasonable one and affected their credit as witnesses."

The defendant asked the judge to rule that his declarations made to the witness Tuck were so induced by Tuck, while as an officer he had the defendant in his custody, as not to be com-

petent in evidence against him; but the judge instructed the jury to consider such declarations as competent evidence, notwithstanding that they were made after the officer's statement to the defendant concerning the general result of pleading guilty, as testified to by him on cross-examination. The jury returned a verdict of guilty; and the defendant alleged exceptions.

*E. J. Sherman*, for the defendant, to the point of objection to the course of cross-examination of the defendant and Susan Edgerly, argued: Their testimony tending to prove acts of adultery in Maine and New Hampshire was inadmissible. 2 Greenl. Ev. § 47. *Commonwealth* v. *Horton*, 2 Gray, 354. *Commonwealth* v. *Thrasher*, 11 Gray, 450. The judge seemed to recognize the principle of law laid down in these cases, but ruled that the evidence was competent in determining "whether the explanation of their motives in coming to Haverhill and their mode of residence together there was a reasonable one and affected their credit as witnesses;" when in fact neither of them had testified anything about their motives in coming to Haverhill, or their mode of residence there, except that they slept separately. Although thus admitted ostensibly to test the credit of the witnesses, its only tendency was improperly to prejudice the jury. *Commonwealth* v. *Edgerly*, 10 Allen, 184. *Farnum* v. *Farnum*, 13 Gray, 508. Previous acts of adultery between them were not competent in evidence to impeach their credit as witnesses. That Susan Edgerly had a bastard child did not impeach her testimony. *Commonwealth* v. *Churchill*, 11 Met. 538. And her testimony as to wishing it to be understood in Haverhill that she was the defendant's wife was inadmissible. Her statements to that effect, made in the defendant's absence, are inadmissible; much more her unexpressed wishes. *Commonwealth* v. *Harwood*, 4 Gray, 41.

*C. Allen*, Attorney General, for the Commonwealth, besides cases cited in the opinion to the point of the admissibility of the defendant's confession, cited *Commonwealth* v. *Howe*, 2 Allen, 153.

FOSTER, J. The defendant's confession was made to the officer who had him in custody immediately after he had been

told by the officer that "as a general thing it was better for a man who was guilty to plead guilty, for he got a lighter sentence." It is true that this remark was in reply to an inquiry by the prisoner whether he should advise him to plead guilty, and that the officer premised by saying that "he did not wish to advise him one way or the other for fear it might not suit him." But we do not think any different rule is to be applied because the prisoner introduced the conversation on the subject, and solicited the counsel of the officer. The officer ought not to have assumed to act as his adviser even at the prisoner's request. This did not change the relation in which they stood to each other. Nor can we allow any distinction founded on the suggestion that the remarks related to pleading guilty on trial, and not to making a confession *in pais.* An avowal of a determination to plead guilty may be an implied admission of guilt; and a plea of guilty in court is a confession of the most solemn kind.

This case does not require us to consider whether the true rule is that a confession in a criminal case is admissible unless it appears to have been made under an improper inducement, or whether it must appear to be voluntary before evidence of it will be received. On this question the authorities differ.

There is no doubt that any inducement of temporal fear or favor coming from one in authority which preceded and may have influenced a confession, will cause it to be rejected unless the confession is made under such circumstances as show that the influence of the inducement has passed away. No cases require more careful scrutiny than those of disclosures made by a party under arrest to the officer who has him in custody, and in none will slighter threats or promises of favor exclude the subsequent confessions. *Commonwealth* v. *Taylor*, 5 Cush. 610. *Commonwealth* v. *Tuckerman*, 10 Gray, 193. *Commonwealth* v. *Morey*, 1 Gray, 461. "Saying to the prisoner that it will be worse for him if he does not confess, or that it will be better for him if he does, is sufficient to exclude the confession, according to constant experience." 2 East P. C. 659. 1 Greenl. Ev § 219. 2 Bennett & Heard Lead Crim. Cas. 164, "Confessions" *passim.* Each case depends largely on its own specia.

circumstances. But we have before us an instance in which the officer explicitly held out to the defendant the hope and inducement of a lighter sentence if he pleaded guilty. And a determination to plead guilty at the trial thus induced would naturally lead to an immediate disclosure of guilt. Very many confessions have been rejected by courts of high authority, the circumstances attending which were less objectionable than those in the present case. And we are aware of no decisions which would warrant the admission of this evidence. In *Commonwealth* v. *Morey* a confession was received, although the owner of the stolen property had told the defendant that " he thought it was better for all concerned in all cases for the guilty party to confess; " but there he immediately added " that in his opinion it would make no difference as to legal proceedings; " and upon the whole conversation it was apparent that the appeal was made solely to the moral feelings of the accused and did not amount to an inducement to expect any diminution of punishment. In the present case the hope of a lighter sentence was expressly held out.

The defendant and his alleged paramour having testified that the act of adultery charged had never been committed between them, they were both properly subjected to a cross-examination as to their intimacy with and relations to each other. And none of the inquiries objected to appear to have exceeded the latitude properly allowed under such circumstances. But, because of the admission of the confessions, the exceptions are sustained.