COMMONWEALTH vs. RICHARD A. MANDILE.

Hampden. February 3, 1986. — April 23, 1986.

Present: WILKINS, LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Evidence,* Admissions and confessions. *Practice, Criminal,* Admissions and confessions.

At the hearing on a motion to suppress statements made by a defendant to police officers, the judge's findings that the defendant, who had been given Miranda warnings and was familiar with the criminal justice system, made certain statements before a conditional offer of leniency had been made by a police officer in response to the defendant's requests, that there was no other promises made to the defendant by law enforcement officers, and that the defendant exercised his right to speak with his counsel before making a tape-recorded statement did not warrant the judge's conclusion that the defendant's recorded statement had been "coerced by circumstances." [413-415]

INDICTMENTS found and returned in the Superior Court Department on January 31, 1985, and February 20, 1985, respectively.

A motion to suppress evidence was heard by *Raymond R. Cross,* J.

An application for an interlocutory appeal was granted by *Wilkins,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him.

*Charles K. Stephenson,* Assistant District Attorney, for the Commonwealth.

*William M. Bennett* (*Wendy Sibbison* with him) for the defendant.

LYNCH, J. This case is before the court on an interlocutory appeal from an order by a Superior Court judge suppressing certain statements made by the defendant to law enforcement officials after his arrest on January 25, 1985. The defendant had filed a motion to suppress, asserting that the statements

were not voluntary because they were induced by assurances of protection and leniency. After hearing testimony from several witnesses, the judge ordered the statements suppressed. The Commonwealth was granted leave to appeal from the order of the Superior Court, pursuant to Mass. R. Crim P. 15 (b) (2), 378 Mass. 882 (1979). A single justice reported the appeal to the full court. We reverse.

The motion judge found the following facts. On January 25, 1985, at 2:10 P.M., State Trooper Kevin Murphy placed the defendant under arrest for unlawful possession of ammunition and advised him of his constitutional rights. At 2:52 P.M., State Trooper David Kenney arrived on the scene and arrested the defendant on another charge, advised the defendant of his rights, and asked him if he understood those rights. The defendant stated that he did. En route to the police station (where he arrived at approximately 3:30 P.M.), the defendant stated that in the trunk of his car there was a firearm which had been stolen during a house break, and that he did not shoot anyone. He also stated that he wanted to talk to Trooper Kenney when he arrived. At the station the defendant met with Trooper Kenney in a private office and informed him that he could provide information concerning the death of one Carl Valiton, but only on the condition that he be given leniency, be granted immunity from prosecution with respect to that death, and be placed into a witness protection program. Trooper Kenney informed Detective Lieutenant George W. Powers, Jr., of the defendant's demands. The defendant, without promise or inducement, told Detective Powers that he had picked up an unidentified man, driven him to a house in Buckland, watched the man enter the house and return to the car saying that he had just killed someone. After the defendant repeated his demands, Detective Powers made no promises or inducements, but instead said he would convey the demands to the district attorney. Detective Powers discussed the situation with the first assistant district attorney and informed the defendant that no promises would be made.[1] Later that day, but before 4:15

---

[1] During the conversation with Detective Powers, the defendant was given an alcoholic beverage which, along with other alcohol he had consumed earlier in the day, did not leave him drunk or incoherent.

P.M., Trooper Kenney discussed the situation with the first assistant district attorney, and then told the defendant that there would be no discussion of leniency unless he showed good faith by revealing the whereabouts of the murder weapon. At approximately 4:15 P.M. the defendant agreed, but a two-hour search of the area that the defendant indicated would yield the weapon was fruitless.[2] The defendant was returned to the station, at about 7 P.M., and Trooper Kenney again informed the defendant that the district attorney would make no promises of leniency. The defendant spoke with his attorney by telephone, for about five minutes, shortly afterwards. At 7:45 P.M., after being advised of his constitutional rights and waiving them in writing, the defendant gave a detailed statement, which was tape recorded.

The judge found that during the questioning the defendant was not under the influence of alcohol or narcotics and was not incoherent, emotional, or detached from reality. The defendant is middle-aged, has a ninth grade education, and has had a lengthy involvement with the criminal justice system.

The judge held that all statements made after Trooper Kenney informed the defendant that any discussion of leniency must be preceded by his providing reliable information were involuntary and thus should be suppressed. He held that the defendant had "crossed the Rubicon" in his attempt to show good faith by leading the police on a search of the banks of the Connecticut River, and "had already made a fatal commitment based on a promise — however slight." The judge further stated, "The statement . . . given so soon after the ineffectual attempt to show good faith [leads] one to believe the defendant was now coerced by circumstances, to attempt to salvage his deal."

In reviewing a judge's determination regarding a knowing waiver of Miranda rights and voluntariness, we "grant substantial deference to the judge's ultimate conclusions and we will not reject a judge's subsidiary findings if they are warranted by the evidence." *Commonwealth* v. *Benoit,* 389 Mass. 411,

---

[2] The weapon was recovered the next day approximately one mile from the site the defendant had indicated.

419 (1983). *Commonwealth* v. *Williams,* 388 Mass. 846, 851 (1983). *Commonwealth* v. *Tavares,* 385 Mass. 140, 144-145, cert. denied, 457 U.S. 1137 (1982). However, we will make an independent inquiry "to ascertain whether the judge properly applied the law in a given case." *Commonwealth* v. *Benoit, supra.* Voluntariness turns on the "totality of the circumstances," including promises or other inducements, conduct of the defendant, the defendant's age, education, intelligence and emotional stability, experience with and in the criminal justice system, physical and mental condition, the initiator of the discussion of a deal or leniency (whether the defendant or the police), and the details of the interrogation, including the recitation of Miranda warnings. See *id.*; *Commonwealth* v. *Williams, supra* at 852-854; *Commonwealth* v. *Wilborne,* 382 Mass. 241, 252 (1981); *Commonwealth* v. *Chung,* 378 Mass. 451, 456-458 (1979); *Commonwealth* v. *Meehan,* 377 Mass. 552, 563-565 (1979), cert. dismissed, 445 U.S. 39 (1980); *State* v. *Jordan,* 114 Ariz. 452, 454 (1976), judgment vacated as to death penalty, 438 U.S. 911 (1978); *Taylor* v. *Commonwealth,* 461 S.W.2d 920, 922 (Ky. Ct. App. 1970), cert. denied sub nom. *Brown* v. *Kentucky,* 404 U.S. 837 (1971). Of course, before any admissions or confessions can be admitted in evidence, those statements must be proved to be voluntary beyond a reasonable doubt. *Commonwealth* v. *Tavares, supra* at 151-152. See *Commonwealth* v. *Parham,* 390 Mass. 833, 838 & n.3 (1984). Compare *Lego* v. *Twomey,* 404 U.S. 477, 489 (1972) (admissibility under Federal Constitution requires such a showing only by a preponderance of the evidence).

The findings of the judge concerning the circumstances surrounding the defendant's statements demonstrate that the statements were not involuntary and therefore that the judge's holding to the contrary was wrong as a matter of law.[3] The defendant

---

[3] The defendant argues that the incriminating statements made before the written waiver and taped statement were also involuntary because they were made after the conditional offer of leniency. The judge clearly found that those statements were made before that offer. A review of the transcript reveals that the judge's findings were fully warranted by the evidence, and

was not intoxicated, or emotional, nor was he detached from reality; he was of sufficient age, educational background, and intelligence to comprehend the meaning of his actions and was familiar with the criminal justice system. He was given Miranda warnings three times, the last time just before his written waiver and taped statement. He was aware of his right to talk with counsel and in fact exercised that right prior to giving his statement. Also, the defendant initiated the discussion of leniency, and affirmatively sought a deal. The judge concluded, however, that the defendant was "coerced by circumstances" to make a statement. This was an error of law.

There were no specific or implied promises made to the defendant save the conditional promise, which the judge recognized as "slight," that, if he demonstrated good faith by revealing the location of the weapon, then the district attorney would *discuss* leniency. (The defendant was never promised that any lenient treatment would result.) Furthermore, the defendant knew at the time of the waiver and taped statement that there were no promises outstanding, as Trooper Kenney had informed him. The defendant may have hoped to rekindle whatever good faith he had lost by failing to provide accurate information — there was no assurance given by the police or district attorney that that hope would materialize.[4] In *Commonwealth* v. *Meehan, supra* at 564, we held that not all inducements are coercive: "An officer may suggest broadly that it would be 'better' for a suspect to tell the truth, may indicate that the person's cooperation would be brought to the attention of the public officials or others involved, or may state in general terms that cooperation has been considered favorably by the courts in the past" (footnotes omitted). See *Commonwealth* v.

that the conditional offer of leniency, as authorized by the first assistant district attorney, came after those statements were made. The judge's explicit finding that no promises or inducements were offered for that information was warranted, and no issue of coercion is present with regard to that information.

[4] The defendant's prior statements and actions, however inculpatory, did not taint the later waiver and taped statement, since the prior statements were offered and given voluntarily and without promise or inducement.

*Williams, supra* at 855; *Commonwealth* v. *Fournier,* 372 Mass. 346, 349 (1977) (promise not to disclose statement to a particular police officer not an inducement to confess since it "merely limited the use to be made of the statement the defendant was ready to make"). "What is prohibited, if a confession is to stand, is an assurance, express or implied, that it will aid the defense or result in a lesser sentence." *Commonwealth* v. *Meehan, supra* at 564. See *id.* at 564 n.8, 565, and cases cited. See also *Commonwealth* v. *Curtis,* 97 Mass. 574, 577-579 (1867), and cases cited.

Since the judge's findings concerning the circumstances of the waiver and statements demonstrate voluntariness, the order of the Superior Court is reversed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*