COMMONWEALTH vs. MARK EDWARDS
(and a companion case[1]).

Suffolk. January 9, 1995. - June 26, 1995.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Evidence*, Admissions and confessions. *Constitutional Law*, Admissions
and confessions, Waiver of constitutional rights. *Waiver*. *Practice,
Criminal*, Voluntariness of statement.

Police officers interrogating a defendant were not required to readvise him
of his Miranda rights and obtain a second waiver before videotaping
the defendant's statements. [671]
At a hearing on a criminal defendant's motion to suppress his statements
to police the judge properly concluded that the defendant validly
waived his Miranda rights; in the totality of the circumstances, the
waiver was not thereafter rendered involuntary by police officers' using
false information to elicit incriminating statements from him. [669-670,
671-673]
Police officers' intentional use of false information during an interrogation
to elicit incriminating statements from a defendant did not, in the total-
ity of the circumstances, render the defendant's subsequent statements
involuntary. [673-674]

INDICTMENTS found and returned in the Superior Court
Department on September 18, 1992.

Pretrial motions to suppress evidence were heard by *Rob-
ert A. Mulligan*, J.

Applications for leave to prosecute interlocutory appeals
were allowed by *Greaney*, J., in the Supreme Judicial Court
for the county of Suffolk, and the appeals were reported by
him.

*John M. Galvin* for Mark Edwards.

---

[1]Commonwealth *vs.* Paul Gunter.

*John P. Zanini*, Assistant District Attorney, for the Commonwealth.

*Roger Witkin*, for Paul Gunter, joined in a brief.

LIACOS, C.J. The defendants were indicted, along with co-defendant Cory Selby, on one count of murder in the first degree, unlawful possession of a firearm, and entering a dwelling while armed with the intent to commit a felony. Edwards, Gunter, and Selby individually filed motions to suppress custodial statements made to the police. The motions were denied and each codefendant was granted leave to pursue an interlocutory appeal by a single justice of this court. The three motions contained substantially the same assertions, and therefore their appeals were consolidated. This opinion addresses the arguments presented by Edwards and Gunter.[2] The claims of error raised by codefendant Cory Selby, and their resolution, are discussed separately. *Commonwealth* v. *Selby, ante* 656 (1995).

The motion judge found the following facts with regard to the custodial interrogation of Edwards. These findings are " 'binding in the absence of clear error . . . and [we] view with particular respect the conclusions of law which are based on them.' *Commonwealth* v. *Correia*, 381 Mass. 65, 76 (1980). While the judge's ultimate findings of fact and rulings of law, as they bear on issues of constitutional dimension, are open for reexamination by this court, such ultimate findings are 'entitled to substantial deference by this court.' *Commonwealth* v. *Bookman*, 386 Mass. 657, 661 n.6

---

[2]The single brief filed on behalf of defendants Edwards and Gunter addresses almost entirely the assertions of Edwards. With regard to defendant Gunter, the brief includes only a short, conclusory argument that Gunter's statements were made involuntarily. We conclude that Gunter's assertions as briefed do not rise to the level of adequate appellate argument. Mass. R.A.P. 16 (a) (4), as amended, 367 Mass. 921 (1975). See *Commonwealth* v. *Cook*, 419 Mass. 192, 194 n.1 (1994). Nevertheless, we have reviewed the transcript of the motion hearing (no written findings were filed as to Gunter) and conclude that there is no merit to Gunter's claim that his statements were made involuntarily. The motion was properly denied.

(1982)." *Commonwealth* v. *Bottari*, 395 Mass. 777, 780 (1985).

In May, 1992, Boston police Detectives Timothy Murray and Dennis Harris began investigating the murder of one Jack Berry, Jr. In June, 1992, Larricia McConnico informed Murray that she had witnessed the murder of Berry and that it had occurred when Cory Selby and Mark Edwards confronted the victim on March 22, 1991. McConnico stated that Selby shot the victim during the confrontation.

Edwards was placed under arrest and booked for murder, armed assault in a dwelling, and unlawfully carrying a firearm. The judge found that Edwards was "alert, coherent, [and] understood what was transpiring." He also found that Edwards had graduated high school and had attended college for two years. Edwards was read, and himself read, Miranda[3] rights from a printed form. He initialled each of the Miranda rights on the form and printed his name in the space indicating that he had read and understood his rights and was nevertheless willing to make a statement without an attorney present. He then signed the form and telephoned his mother.

Detective Dennis Harris told Edwards that he had been identified in connection with a murder. Edwards asked that, if they were talking about a murder, where were Paul and "Floyd" (an alias of Selby).[4] He then began to make a statement in which he described the circumstances of the murder. Edwards said that he had been walking in the Dorchester section of Boston and had been picked up by Paul Gunter, Floyd, and a woman. He said that he asked them for a ride to his mother's house. While in the car, Edwards heard Floyd and Gunter discussing a robbery that had occurred in which drugs and money were taken. When the name of one of the robbers was mentioned, Edwards said that he knew the man

---

[3]*Miranda* v. *Arizona*, 384 U.S. 436 (1966).

[4]The interrogating officers had not, at that point, referred to any other individuals.

and if he went with them to see the man he might prevent anyone from getting hurt.

Edwards claimed that he went to the victim's residence with the others but did not enter the building. Harris told him that he matched a description of one of the assailants. Edwards maintained that he did not enter the victim's apartment. However, the detectives had information, including statements from McConnico, that Selby and Edwards had entered the apartment of the victim.

Murray then asked Edwards how his handprint could have been found in the building if his statement that he had not entered the building was true. In fact, the police had not found the print in the building, it was being used as a "ruse" to induce Edwards to admit he had been in the building. Edwards then admitted to being in the building, that he had been carrying a knife which looked like a gun, and that "Floyd" got into a struggle with a man in the apartment during which the man was shot three times.

Edwards then repeated this statement on videotape. At the conclusion of the statement, Edwards acknowledged that he had received and understood his Miranda rights and that he had been given some food during the interrogation. Edwards then picked a photograph of Paul Gunter from an array.

About three hours later, the interrogation on tape resumed briefly. Edwards stated that he had identified "Floyd," also known as Cory Selby, in a photographic array and that he was the person who shot the victim.

The judge found that "[a]t all times during the interview, Edwards was coherent, alert and responsive. He never said that he wanted to remain silent or that he wanted to stop answering questions and he never stated that he wanted to have a lawyer."

Based on these findings, the judge concluded that Edwards made a voluntary, knowing, and intelligent waiver of his Miranda rights and that his statements were made voluntarily.

1. *Miranda waiver.* The Commonwealth bears the burden of proving the validity of a Miranda waiver beyond a reasonable doubt. *Commonwealth* v. *Day,* 387 Mass. 915, 920-921

(1983). To be valid the waiver must be made voluntarily, knowingly, and intelligently. *Miranda* v. *Arizona*, 384 U.S. 436 (1966). Although this issue, being one of constitutional dimensions, is open for review by this court, *Commonwealth* v. *Jackson*, 377 Mass. 319, 325 (1979), quoting *Commonwealth* v. *Haas*, 373 Mass. 545, 550 (1977), *S.C.*, 398 Mass. 806 (1986), the judge's finding that Edwards made a valid waiver is entitled to substantial deference. *Commonwealth* v. *Day*, *supra* at 920.

Edwards does not dispute the initial validity of the Miranda waiver obtained by the detectives when he was originally read his rights on his arrival at the homicide division and prior to the start of any interrogation. Rather, he argues that the waiver became involuntary, and thus invalid, once the detectives used the false handprint to elicit incriminating statements from him. He also argues that the use of the false handprint rendered any subsequent waiver of his Miranda rights likewise involuntary. Therefore, Edwards concludes, any statements made subsequent to the introduction of the false handprint, including the videotaped statement, must be suppressed as they were obtained in violation of Edwards's Miranda rights.

In determining whether a waiver was made voluntarily, the court must examine the totality of the circumstances surrounding the making of the waiver. *Commonwealth* v. *Medeiros*, 395 Mass. 336, 345 (1985). See *Oregon* v. *Bradshaw*, 462 U.S. 1039, 1046 (1983), quoting *Edwards* v. *Arizona*, 451 U.S. 477, 486 n.9 (1981). This test is essentially the same as that used for determining the voluntariness of statements under the due process clause of the Fourteenth Amendment to the United States Constitution (see our discussion in part 2 below), although they are separate and distinct issues. See *Commonwealth* v. *Medeiros, supra* at 343; *Commonwealth* v. *Williams*, 388 Mass. 846, 851 & n.2 (1983); *Commonwealth* v. *Garcia*, 379 Mass. 422, 428 (1980). In light of the totality of the circumstances present in the instant case, we conclude that Edwards voluntarily waived his Miranda rights.

First, Edwards's assertion that the detectives were required to readvise him of his Miranda rights and obtain a second waiver prior to videotaping his statements is without legal support. As a general rule, if police have already obtained a valid waiver from a suspect, they are not required to readvise a suspect of his Miranda rights or obtain a second waiver absent a break in the interrogation such as an exercise of the defendant's rights under the Fifth Amendment to the United States Constitution or a request for counsel or, in certain instances, when there is a significant lapse of time between the waiver and the statements. See *Commonwealth* v. *Mello, ante* 375, 386 (1995).

We do not agree with Edwards that the instant case is governed by our holding in *Commonwealth* v. *Jackson, supra,* nor is the instant case similar to *Commonwealth* v. *Taylor,* 374 Mass. 426 (1978). In those cases, we suppressed the defendants' statements because the police used trickery or deceitful tactics in an effort to obtain a waiver after the defendants had exercised their right to remain silent or requested counsel. The use of trickery in obtaining a waiver is disapproved of and may indicate that any subsequent waiver was made involuntarily. *Miranda* v. *Arizona, supra* at 476. *Commonwealth* v. *Jackson, supra* at 328 & n.8. However, "[a]lthough officially dispensed misinformation is always relevant to, and a warning signal for, the issue whether there has been a voluntary waiver of the right to remain silent, the resolution of the issue turns, in the end, on an analysis of the entire circumstances in which a damaging admission has been made." *Commonwealth* v. *Nero,* 14 Mass. App. Ct. 714, 717 (1982). Thus, trickery alone may not invalidate a waiver if there is evidence, in light of the other surrounding circumstances, that the waiver was made voluntarily.

Unlike the defendants in *Jackson* and *Taylor,* Edwards made an indisputably valid waiver of his Miranda rights upon his arrival at the homicide division and did not exercise his right to remain silent, request counsel, or otherwise break off the interrogation at any point. See *Commonwealth* v. *Medieros, supra* at 344; *Commonwealth* v. *Nero, supra* at

718 ("It is significant that the defendant never invoked his right to remain silent nor his right to have counsel before he began to make his inculpatory statements"). These circumstances are more similar to those addressed by this court in *Commonwealth* v. *Forde*, 392 Mass. 453 (1984). In *Forde*, after being read his Miranda rights, the defendant was falsely told that fingerprints could be taken from a corpse and that his fingerprints had been found on the victim's body. *Id*. at 454-455 & n.1. Thereafter, the defendant made incriminating statements. We agreed with the judge below that the defendant had made a voluntary waiver of his Miranda rights. We stated that "the defendant had not asserted his right to remain silent, and thus he is not necessarily entitled to suppression. . . . Nor do the characteristics of the accused or the circumstances of the interrogation suggest that the defendant's waiver of his Miranda rights was anything but voluntary, knowing, and intelligent. The use of misinformation by the police does not in itself defeat a showing of voluntary waiver of rights. . . . Having considered the totality of the circumstances, we conclude that the waiver was valid." (Citations omitted.) *Id*. at 455-456. In the instant case, the evidence weighs more heavily in favor of a conclusion that Edwards's waiver was voluntary than the facts of the *Forde* case. Edwards had already made a waiver of his rights some time prior to the introduction of the false handprint. Edwards suggests that an otherwise valid waiver may somehow become involuntary in the midst of an interrogation by the introduction of falsely incriminating information by the police. Whether this may be true in some instances, on Miranda grounds, we need not decide. It is clear to us in the instant case that, in the totality of the circumstances, the indisputably valid waiver made at the time of Edwards's arrival at the homicide division remained voluntary throughout the interrogation, and was not rendered involuntary by the use of the false handprint.

Although the use of the false handprint likely factored into Edwards's decision to confess, we do not think that his will was overcome so as to render the waiver involuntary, espe-

cially in light of the remaining circumstances, all of which indicate that Edwards made a valid waiver. See *United States* v. *Velasquez*, 885 F.2d 1076, 1089 (3d Cir. 1989), cert. denied, 494 U.S. 1017 (1990). Not only did Edwards indicate that he was willing to speak to the detectives after being advised of his Miranda rights, the judge found that he was lucid and alert throughout the interrogation and possessed no characteristics or disabilities which weigh against our conclusion that the waiver was voluntary. Under the circumstances, we conclude that Edwards made a valid waiver of his Miranda rights which supports the admissibility of the statements at issue.

2. *Voluntariness of confession.* Edwards also claims, as did codefendant Selby, that the intentional use of false information by Murray and Harris rendered his subsequent statements involuntary in violation of his due process rights under the Fourteenth Amendment. We disagree.

In determining whether Edwards voluntarily waived his Miranda rights, we examined the totality of the circumstances surrounding the making of the waiver. In examining the voluntariness of the statements, on common law due process grounds, we instead examine the totality of the circumstances surrounding the making of the statements themselves in an effort to determine whether they were the product of a "rational intellect" and a "free will." *Commonwealth* v. *Selby, supra* at 662 (1995). The voluntariness of the waiver on the basis of Miranda and the voluntariness of the statements on due process grounds are separate and distinct issues but they are both determined in light of the totality of the circumstances and they share many of the same relevant factors. See *id.* See also *Commonwealth* v. *Forde*, 392 Mass. 453, 455-456 (1984); *Commonwealth* v. *Garcia*, 379 Mass. 422, 428 (1980); *Commonwealth* v. *Cruz*, 373 Mass. 676, 688-689 (1977).

As we stated in *Commonwealth* v. *Selby, supra,* the use of false information by police to elicit statements is a relevant factor in determining whether statements were made involuntarily in violation of due process. However, in light of the

totality of the circumstances, we believe that Edwards's statements were nevertheless made voluntarily. Edwards does not argue that other circumstances existed during the interrogation, or that he possesses relevant characteristics, which would render his statements involuntary. He relies solely on the use of the false handprint by the detectives.

In determining the voluntariness of the admissions, the judge properly considered the fact that Edwards was read complete and accurate Miranda warnings and made a valid waiver of those rights prior to making the statements at issue. See *Frazier* v. *Cupp*, 394 U.S. 731, 739 (1969) ("Before petitioner made any incriminating statements, he received partial warnings of his constitutional rights; this is, of course, a circumstance quite relevant to a finding of voluntariness"). See also *Commonwealth* v. *Selby, supra* at 664. Moreover, the motion judge found that Edwards was "coherent, alert and responsive" during the interrogation. Based on the facts presented, we do not think that the use of the false handprint rendered the subsequent statements involuntary in violation of due process. See *Frazier* v. *Cupp*, supra at 739; *United States ex rel. Latham* v. *Deegan*, 450 F.2d 181, 185 (2d Cir. 1971), cert. denied, 405 U.S. 1071 (1972) ("A mere deception by an interrogator, ipso facto, does not invalidate a confession absent other compelling circumstances").

The orders denying the motions to suppress are affirmed.

*So ordered.*

Justice Nolan participated in the deliberation on this case, but retired before the opinion was issued.