Commonwealth *v.* Selby.

COMMONWEALTH *vs.* CORY SELBY.

Suffolk. October 14, 1997. - November 21, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, MARSHALL, & IRELAND, JJ.

*Evidence,* Cross-examination. *Practice, Criminal,* Instructions to jury, Voluntariness of statement, Capital case. *Homicide. Felony-Murder Rule.*

In a murder case in which the defendant challenged the voluntariness of his incriminating statements to police officers and in which the issue was submitted to the jury for their consideration with correct instructions, no substantial likelihood of a miscarriage of justice arose from the judge restricting the defendant's irrelevant inquiry of a police witness regarding his interpretation of *Commonwealth* v. *Selby*, 420 Mass. 656 (1995), which discussed police use of deceptive techniques to elicit admissions from suspects. [169-171]

At a murder trial, the judge did not err in refusing to instruct the jury on involuntary manslaughter, where the evidence supported the jury's finding of guilty beyond a reasonable doubt on both theories on which the case was submitted: deliberate premeditation and felony-murder. [172-173]

No reason appeared on the record of a conviction of murder in the first degree on both the theory of deliberate premeditation and felony-murder for this court to exercise its power under G. L. c. 278, § 33E, to grant a new trial or reduce the verdict. [173]

INDICTMENTS found and returned in the Superior Court Department on September 18, 1992.

The cases were tried before *Robert W. Banks,* J.

*Dana A. Curhan (Jeffrey Denner* with him) for the defendant.

*John P. Zanini,* Assistant District Attorney, for the Commonwealth.

IRELAND, J. A Superior Court jury convicted the defendant of murder in the first degree on two separate theories: deliberate premeditation and felony-murder. The killing took place during the commission of a separate felony punishable by life imprisonment — in this case, armed assault in a dwelling, G. L. c. 265, § 18A, of which the defendant also was convicted. The defendant received the mandatory term of life imprisonment without the possibility of parole on the first degree murder convic-

tion and a concurrent sentence of from four to five years on a conviction of unlawfully possessing a firearm, third offense, G. L. c. 269, § 10 (*a*). (The judge placed the conviction of armed assault in a dwelling on file, with the defendant's consent, without imposing sentence.)

The defendant appeals from the convictions, claiming that he was improperly denied his right to cross-examine a police officer concerning that officer's knowledge or awareness of a certain dictum in *Commonwealth* v. *Selby*, 420 Mass. 656 (1995).[1] He also claims that he should have received a jury instruction on involuntary manslaughter. Finally, he requests relief under G. L. c. 278, § 33E, owing in substantial part to the alleged misconduct of two police officers who, admittedly, used deceptive tactics to elicit incriminating statements from him while he was in police custody. We affirm the convictions.

The deceptive tactics of the two officers are described in *Commonwealth* v. *Selby*, *supra* at 658-659.[2] On examining the "totality of the circumstances" surrounding the defendant's statements, we concluded that they were given voluntarily and without coercion, despite the officers' ruse. *Id.* at 664-665. At the same time, we expressed in dictum our disapproval of such police tactics. *Id.* at 665.

1. *Limitation on cross-examination.* During his cross-examination of one of the police officers, defense counsel attempted to elicit evidence of the officer's knowledge of the dictum in *Selby*. Counsel asked whether the officer was "aware that the State Supreme Court has disapproved of [the officers' technique of deception]." The officer responded, "I believe the State Supreme Court has approved this method, upheld this method five to zero most recently."[3] Defense counsel then remarked to the officer, "There was a decision that they [the Supreme Judicial Court] disap-

---

[1]*Commonwealth* v. *Selby*, 420 Mass. 656 (1995), was an interlocutory appeal presented by this defendant seeking suppression of incriminating statements that he claimed were elicited from him as a result of false information concocted by the interrogating police officers.

[2]The police officers told the defendant, who was in custody at the time, that they had found his handprint and his fingerprints at the crime scene when, in fact, they had not. The officers employed the same trickery against Selby's compatriots, who made confessional statements to the officers. See *Commonwealth* v. *Edwards*, 420 Mass. 666, 669 (1995).

[3]The *Selby* case was decided unanimously by a panel of five Justices. The related case of *Commonwealth* v. *Edwards*, *supra*, see note 1, was also decided unanimously.

proved of it . . . ." The judge interrupted and, at sidebar, instructed counsel to terminate further inquiry into the *Selby* opinion. Defense counsel lodged no objection to the judge's ruling; nor did he produce an offer of proof explaining why testimony concerning a witness's knowledge, understanding, or interpretation of a particular appellate opinion (or dictum therefrom) was relevant and admissible. Our standard of review, therefore, is limited to whether the uncontested restriction by the judge on cross-examination of the police officer posed a substantial likelihood of a miscarriage of justice. See, e.g., *Commonwealth* v. *Young*, 401 Mass. 390, 404 (1987). We conclude that it did not.

According to the defendant, the truncated inquiry into the *Selby* opinion left jurors with the false impression that the Supreme Judicial Court approves of police use of deceptive tactics while questioning suspects. Whatever we wrote in *Selby* (or how that was interpreted by a witness) was irrelevant to the core question posed to the jurors, namely, whether the defendant's incriminating statements were voluntary beyond a reasonable doubt. See *Commonwealth* v. *Grenier*, 415 Mass. 680, 687 (1993) (jury could consider defendant's statement only on finding beyond a reasonable doubt that it was made voluntarily); *Commonwealth* v. *Tavares*, 385 Mass. 140, 152, cert. denied, 457 U.S. 1137 (1982) (jurors must disregard defendant's admissions unless Commonwealth proves beyond a reasonable doubt that they were voluntary). In assessing that question, the jurors were to consider all of the evidence "surrounding the interrogation and the individual characteristics and conduct of the defendant." *Selby*, *supra* at 663, and cases cited. See also *Commonwealth* v. *Edwards*, 420 Mass. 666, 673-674 (1995). That, of course, included detailed evidence produced by the defendant concerning the officers' use of trickery to help induce the defendant's statements. Cf. *Commonwealth* v. *Meehan*, 377 Mass. 552, 563 (1979), cert. dismissed, 445 U.S. 39 (1980) (judge should consider police misconduct, including misinformation given to a defendant by a police officer, in ruling whether confession is voluntary).

The entire question of the voluntariness of the defendant's incriminating statements was submitted to the jury for their independent consideration, in keeping with our long-standing rule of "humane practice." See *Commonwealth* v. *Paszko*, 391 Mass. 164, 179-180 (1984); *Tavares*, *supra* at 149-153; *Com-*

*monwealth* v. *Chung*, 378 Mass. 451, 456 (1979) (humane practice applied to confessions but not to admissions); and *Commonwealth* v. *Harris*, 371 Mass. 462, 469-470 (1976) (humane practice applied to. confessions only). In *Tavares, supra*, we extended our humane practice to include "all incriminating statements made by the accused," even statements, like those of this defendant, that fall short of a full confession. *Id.* at 150.

Under humane practice, the question whether the defendant's incriminating statements or confessions are voluntary is first decided by the judge outside of the jury's presence. *Id.* at 149. If the judge concludes that the statements were, in fact, voluntary, then the entire matter is submitted to the jury for their own determination. *Id.* at 150. We have stated a preference that jurors *not* be informed beforehand of the judge's initial findings on the voluntariness issue. *Harris* v. *Commonwealth,* 371 Mass. 478, 481 n.3 (1976) ("better practice" is for judge not to inform jury of his conclusion). In essence, then, humane practice gives a defendant two opportunities — one before a judge and another before a jury — to demonstrate that his admissions or confessions were not voluntary. Humane practice, however, is not constitutionally required. See *Paszko, supra* at 181; *Tavares, supra* at 151-152; and *Chung, supra* at 456, all of which state that the judge's initial ruling on voluntariness and, hence, admissibility of admissions or confessions is constitutionally required, but that independent jury consideration of voluntariness under humane practice is not.

The jury were given correct instructions on the voluntariness issue. Those instructions included detailed remarks reminding the jurors about the officers' use of a ruse on the defendant. The jury were further instructed that they should consider that tactic in the over-all assessment — "the totality of the circumstances" — surrounding the defendant's statements. Significantly, defense counsel neither requested a special instruction on the subject, nor moved to strike the testifying officer's remark about the *Selby* case — a remark that he, himself, had elicited from the officer. Certainly, the judge was not required to strike the officer's remark on his own initiative. The fact that the officer's remark may have led jurors to surmise that the voluntariness of the defendant's statements had initially been decided in the Commonwealth's favor, first by a Superior Court judge and then by the Supreme Judicial Court, did not, however, create a substantial likelihood of a miscarriage of justice.

2. *Failure to instruct on involuntary manslaughter.* The defendant contends that the judge erred in failing to instruct the jury on involuntary manslaughter despite several requests that he do so. "Involuntary manslaughter is an unlawful homicide unintentionally caused by an act which constitutes such a disregard of probable harmful consequences to another as to amount to wanton or reckless conduct." *Commonwealth* v. *Evans*, 390 Mass. 144, 150 (1983), quoting *Commonwealth* v. *Vanderpool*, 367 Mass. 743, 747 (1975). Here, the defendant contends that he did not intend the shooting and that the homicide occurred accidentally because when the victim grabbed the gun, he "reflexively" pulled the trigger several times. Thus, he contends that the jury should have been given an instruction on involuntary manslaughter. We disagree.

There was uncontradicted evidence that the defendant entered the dwelling house of another, carrying a loaded gun, with the intent to commit a robbery. Based on these circumstances, which were known to the defendant, "a reasonably prudent person would have known that according to common experience there was a plain and strong likelihood that death would follow the contemplated act." *Commonwealth* v. *Sanna*, 424 Mass. 92, 100-101 (1997), quoting *Commonwealth* v. *Grey*, 399 Mass. 469, 470 n.1 (1987). The evidence, if believed, required a finding of malice because the threat of death was inherent.

In addition, the defendant's argument entirely overlooks his conviction on a felony-murder theory based on the predicate felony of armed assault in a dwelling. "Where the felony-murder rule applies, generally the defendant is not entitled to an instruction on manslaughter." *Commonwealth* v. *Evans*, 390 Mass. 144, 151 (1983). Overwhelming evidence, including the defendant's own statements, supported conviction on the underlying felony. The defendant entered the apartment brandishing a loaded nine millimeter handgun and threatened the occupants with it. When the gun went off killing the victim, the defendant was involved in the commission of a felony that, by its very nature, is "inherently dangerous to human life." *Commonwealth* v. *Claudio*, 418 Mass. 103, 108 (1994) (armed burglary in dwelling with assault therein, under G. L. c. 266, § 14, is inherently dangerous felony and supported conviction for felony-murder). See *Commonwealth* v. *Hooks*, 375 Mass. 284, 291-292

(1978) (armed assault in dwelling under G. L. c. 265, § 18A, supported conviction for felony-murder).

Factually speaking, the defendant's case is hardly distinguishable on this issue from *Evans, supra,* on this issue. There, the defendant claimed that the accidental discharge of his gun during a struggle with his robbery victim, who was killed as a result, entitled him to an involuntary manslaughter instruction during his trial for felony-murder. *Id.* at 150. We rejected that contention, concluding that the pistol's accidental discharge was "of no consequence," *id.* at 152, where the victim was killed during the defendant's commission of a robbery while armed with a gun. *Id.* at 151. See *Commonwealth* v. *Lussier,* 333 Mass. 83, 92-93 (1955) (no manslaughter charge required in felony-murder case where defendant claimed accidental discharge of his pistol). Here, in *Evans, supra* at 152, there was no credible evidence "that the killing did *not* take place in the course of an inherently dangerous felony" (emphasis added). There was no error.

3. *Relief under G. L. c. 278, § 33E.* The defendant requests a reduction in, or vacation of, the murder verdict because he "had a minimal [criminal] record at the time of his arrest," and because the police misconduct of using deceit to elicit statements from him should not go unnoticed or unsanctioned. We have reviewed the entire record on both the law and the facts, see G. L. c. 278, § 33E, but see no basis for relief. All of the convictions, in our opinion, are more than amply supported by the evidence.

As to the police officers' use of a deception or ruse on the defendant, we reemphasize our strong disapproval of such tactics. Any use by police of trickery, misinformation or the like while questioning suspects will continue to play a prominent role in our assessment whether resulting admissions or confessions were voluntary.

*Judgments affirmed.*