## COMMONWEALTH *vs.* CHRISTOPHER PUCILLO.

· Norfolk. February 3, 1998. - March 18, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, & IRELAND, JJ.

*Evidence,* Admissions and confessions. *Practice, Criminal,* Admissions and confessions, Voluntariness of statement, Required finding, Instructions to jury, Capital case. *Constitutional Law,* Waiver of constitutional rights. *Waiver. Joint Enterprise. Homicide. Malice. Intent. Intoxication.*

At a murder trial, the judge properly admitted in evidence statements made by the defendant to the police, where the record amply demonstrated that the defendant made the statements after a valid waiver of his Miranda rights. [110-111]

Evidence presented at the trial of an indictment for murder in the first degree warranted the jury's finding that the defendant shared the requisite intent for conviction under a joint venture theory. [111-113]

At the trial of an indictment for murder in the first degree, the judge correctly instructed the jury on all the requirements for conviction under a joint venture theory [113-114]; on the role of the defendant's intoxication at the time of the murder in determining whether he had, and shared, the requisite intent [114-115]; and on withdrawal and abandonment [115-116].

No reason appeared on the record of a murder trial for this court to exercise its authority under G. L. c. 278, § 33E, to reduce the verdict or order a new trial. [116]

INDICTMENT found and returned in the Superior Court Department on July 15, 1993.

A pretrial motion to suppress evidence was heard by *Barbara A. Dortch-Okara,* J., and the case was tried before her.

*Robert A. George* for the defendant.

*Robert C. Cosgrove,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. A jury convicted the defendant of murder in the first degree as a joint venturer under theories of deliberate premeditation and extreme atrocity or cruelty. On appeal, the defendant claims that the judge erred in (1) denying his motion to suppress incriminating statements he made to police; (2) denying his motion for a required finding of not guilty; and

(3) instructing the jury on joint venture. He also requests that we exercise our plenary power under G. L. c. 278, § 33E, to order a new trial or to reduce the murder conviction to a lesser degree of guilt. For the reasons set forth below, we affirm the conviction and decline to exercise our power under G. L. c. 278, § 33E.

*Facts.* We set forth the facts in the light most favorable to the Commonwealth, reserving certain details for discussion in conjunction with certain issues raised. See *Commonwealth* v. *Nichypor*, 419 Mass. 209, 210 (1994); *Commonwealth* v. *Burnett*, 417 Mass. 740, 741 (1994). On the evening of June 3, 1993, the defendant, two companions, and the victim purchased a case of beer and a bottle of vodka, and then proceeded to an area known as "Sharon Woods" in Sharon. The four spent the next two hours drinking in a secluded area of the woods near Gavin's Pond. While still in the woods at approximately 9 P.M., the defendant and his two companions secretly made plans to "jump" the victim. Soon thereafter, the three attacked the victim by wrapping a jacket or shirt around the victim's head, knocking him to the ground, and beating him with their fists and feet. They also removed the victim's clothing as he lay motionless on the ground. One of the defendant's companions then found a stick with which he subsequently penetrated the victim's rectum and struck his testicles. For his part, the defendant conceded that he "just kept hitting" and "kicking" the victim. The attack lasted about thirty minutes. At this point, the victim's face was still covered, and there were no signs that he was either conscious or breathing. The defendant's two companions then dragged the victim to the edge of the pond and held his head under water for an extended period. The defendant checked the victim's pulse and found none. Finally, one of the defendant's companions stabbed the victim in the neck. They then covered the half-submerged body with a blanket and sticks from the woods, and the three left the scene.

After finding the victim's body and learning that he had last been seen in the company of the defendant and his two companions, the police interviewed the defendant on the morning of Saturday, June 5. He told them at that time that, on the night of the victim's disappearance, he and his two companions had dropped off the victim at 8 P.M. at Wrentham Center. He then left the police station. At approximately 6 P.M., however, the defendant voluntarily returned to the station, and was

subsequently placed under arrest in connection with the victim's death.

1. *The defendant's statement.* At a suppression hearing, the motion judge found the following facts. On his arrest the defendant was advised of his Miranda rights, and chose not to make any statements at that time. After his father encouraged him to speak openly with the police, the defendant agreed to be interviewed again. The interview was tape recorded by the police. At the outset, the defendant was given a written form containing Miranda warnings. State police Lieutenant Robert Zepf then read the form aloud to the defendant. The defendant acknowledged that he understood each right, and subsequently signed the Miranda form. Over the next hour and twenty minutes, the defendant made statements linking himself to the victim's death.

On appeal, the defendant claims that the judge erred in denying the defendant's motion to suppress these statements. "In reviewing a judge's determination regarding a knowing waiver of Miranda rights and voluntariness, we 'grant substantial deference to the judge's ultimate conclusions and we will not reject a judge's subsidiary findings if they are warranted by the evidence.' " *Commonwealth* v. *Mandile,* 397 Mass. 410, 412 (1986), quoting *Commonwealth* v. *Benoit,* 389 Mass. 411, 419 (1983). "However, we conduct an independent review to ascertain whether the judge properly applied the law." *Commonwealth* v. *Rodriguez,* 425 Mass. 361, 364 (1997). The Commonwealth has the burden of proving beyond a reasonable doubt that a Miranda waiver was valid. *Commonwealth* v. *Magee,* 423 Mass. 381, 386 (1996). "To be valid [a] waiver must be made voluntarily, knowingly, and intelligently." *Id.,* quoting *Commonwealth* v. *Edwards,* 420 Mass. 666, 670 (1995). In determining the voluntariness of a waiver, "the court must examine the totality of the circumstances surrounding the making of the waiver." *Commonwealth* v. *Magee, supra* at 386, quoting *Commonwealth* v. *Edwards, supra* at 670. The relevant factors include "promises or other inducements, conduct of the defendant, the defendant's age, education, intelligence and emotional stability, experience with and in the criminal justice system, physical and mental condition, the initiator of the discussion of a deal or leniency (whether the defendant or the police), and the details of the interrogation, including the recitation of Miranda warnings." *Commonwealth* v. *Mandile, supra* at 413.

In the present case, the judge's findings, which were warranted by the evidence, amply support the conclusion that the defendant's waiver of his Miranda rights was valid. At the time of his arrest, the defendant was seventeen years old and had attained a tenth-grade education. See *Commonwealth* v. *Sarourt Nom*, 426 Mass. 152, 158 (1997) (no suppression where defendant was a "high school dropout"); *Commonwealth* v. *Guyton*, 405 Mass. 497, 498 (1989) (no suppression where defendant was sixteen years old). Moreover, he was apprised of his Miranda rights both orally and in writing, stated that he understood them, and subsequently waived them. *Commonwealth* v. *Mello*, 420 Mass. 375, 384 (1995). As he did this, the defendant appeared "responsive" and "coherent," and "did not appear to be confused." *Commonwealth* v. *Raymond*, 424 Mass. 382, 396 (1997). Finally, there was no evidence of coercion or other "unfair tactics" on the part of the police. *Commonwealth* v. *Silva*, 388 Mass. 495, 503 (1983). The interviewing officer's warning to the defendant that "it would be better if he were truthful" falls far short of the type of police assurances, express or implied, which we have previously found impermissible. See *Commonwealth* v. *Raymond, supra* at 395-396; *Commonwealth* v. *Mandile, supra* at 414-415, citing *Commonwealth* v. *Meehan*, 377 Mass. 552, 564 (1979), cert. dismissed, 445 U.S. 39 (1980). Similarly, the defendant's lack of prior experience with police procedures does not necessarily invalidate his waiver, especially where, as the judge found, he had successfully invoked his right to silence earlier in the evening. *Commonwealth* v. *Mandile, supra* at 414. Consequently, the judge properly concluded that the defendant's waiver was valid.[1]

2. *Motion for required finding of not guilty.* The defendant

---

[1]For similar reasons, we also reject the defendant's claim that his statement was involuntary. "Due process requires a separate inquiry into the voluntariness of the [defendant's] statement, apart from the validity of the Miranda waiver." *Commonwealth* v. *Magee*, 423 Mass. 381, 387 (1996). Although the validity of a Miranda waiver and voluntariness are distinct issues, "they are both determined in light of the totality of the circumstances and share many of the same relevant factors." *Commonwealth* v. *Edwards*, 420 Mass. 666, 673 (1995). As previously discussed, the judge in the present case found that the defendant was seventeen years old, had a tenth-grade education, and was generally coherent at the time of his statements. He received Miranda warnings both orally and in writing, and subsequently waived his rights. In addition, there was no evidence of improper behavior by the police. Indeed, the interrogation lasted less then two hours, and included a nineteen-minute

next contends that the judge erred in denying his motion for a required finding of not guilty. In reviewing such a contention, "we determine whether the evidence offered by the Commonwealth, together with reasonable inferences therefrom, when viewed in its light most favorable to the Commonwealth, was sufficient to persuade a rational jury beyond a reasonable doubt of the existence of every element of the crime charged." *Commonwealth* v. *Campbell*, 378 Mass. 680, 686 (1979).

Specifically, the defendant claims that the Commonwealth failed to prove beyond a reasonable doubt that he shared the requisite intent for conviction under a joint. venture theory. In order to convict a defendant as a joint venturer, the Commonwealth must establish that the defendant "was (1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement . . . willing and available to help the other if necessary." *Commonwealth* v. *Bianco*, 388 Mass. 358, 366, *S.C.*, 390 Mass. 254 (1983). "Additionally, the Commonwealth must show that the defendant shared with the principal the mental state required for the crime of murder." *Commonwealth* v. *Semedo*, 422 Mass. 716, 719 (1996). The mental state required for murder is malice aforethought. Malice aforethought includes intent to kill or cause grievous bodily injury. Alternatively, malice may be inferred if, in the circumstances known to the defendant, "a reasonably prudent person would have known that according to common experience there was a plain and strong likelihood that death would follow the contemplated act." *Commonwealth* v. *Grey*, 399 Mass. 469, 470 n.1 (1987).

Here, the jury could reasonably have found from the evidence presented by the Commonwealth that the defendant shared malice aforethought with his companions. "The jury may infer the requisite mental state from the defendant's knowledge of the circumstances and subsequent participation in the offense." *Commonwealth* v. *Soares*, 377 Mass. 461, 470, cert. denied, 444 U.S. 881 (1979). According to his own statement to the police, the defendant struck the first or second blow of the attack, knocking the victim to the ground. He subsequently hit the victim "in the chest" and "on the jaw," and "kicked" him during the next thirty minutes. From this evidence, the jury could

---

break. Taken together, these facts warrant the judge's finding that the defendant's statements to the police, like his Miranda waiver, were voluntarily made.

have inferred that the defendant not only intended to injure the victim, but also recognized (or should have recognized) the plain and strong likelihood that the victim's death would follow. See *Commonwealth* v. *Semedo, supra* at 720 (shared murderous intent present where defendant "participated . . . in a brutal battery" and "battered the victim's head and body" with his shod foot); *Commonwealth* v. *Sinnott,* 399 Mass. 863, 873 (1987) (jury might properly infer shared intent necessary to convict defendant of murder by joint venture from infliction of · repeated blows and kicks to victim's head, shoulders, and groin). Moreover, there was evidence of previous hostility between the defendant and the victim, including an incident just days before the attack during which the defendant struck the victim repeatedly. See *Commonwealth* v. *Brooks,* 422 Mass. 574, 577 (1996) (necessary intent present where defendant "had previously expressed animosity toward one of the victims"); *Commonwealth* v. *Longo,* 402 Mass. 482, 487 (1988) (requisite mental state for joint venture inferable where there was "evidence of hostility" between defendant and victim). In addition, there was evidence that, just hours before the attack, the defendant was present during a conversation in which killing the victim was discussed. *Commonwealth* v. *Longo, supra* at 487-488 (defendant's murderous intent inferable where defendant was present during conversation where it was stated that the victim "was next"). Considering this evidence in light of the fact that inferences drawn by the jury regarding the defendant's mental state "need only be reasonable and possible and need not be necessary or inescapable," *Commonwealth* v. *Casale,* 381 Mass. 167, 173 (1980), the judge's denial of the defendant's motion for a required finding of not guilty was proper.[2]

3. *Joint venture instructions.* The defendant next claims that the judge's joint venture instructions were erroneous in several respects. We reject the defendant's claims, but will address each individually.

First, the defendant maintains that the judge's instructions effectively permitted the jury to find joint venture based merely

[2]The defendant does not contest the sufficiency of the evidence on premeditation. The evidence recited demonstrates that there was ample evidence warranting the jury's finding in this regard.

on the defendant's presence at the scene of the crime.[3] The judge stated, however:

> "[W]hat is required is that the Commonwealth prove beyond a reasonable doubt that [the defendant] intentionally participated in some meaningful way in the offense either by counseling, hiring, otherwise procuring the principal or the other venturers to commit the crime, by agreeing to stand by, at or near the scene, to render aid, assistance, encouragement if it became necessary or to assist the perpetrators of the crime in making an escape from the scene. . . . The Commonwealth must show that the defendant somehow participated in the venture . . . to the extent that he sought to make that venture succeed. . . . However, Jurors, mere knowledge that a crime is being committed is not sufficient. . . . *The evidence must show more than mere presence at the scene even coupled with the knowledge of the planned act.* Mere acquiescence, passive acquiescence, is not sufficient to warrant a conviction. There must be some evidence of some actual participation and assistance by [the defendant] in the perpetration of the crime." (Emphasis added.)

The judge subsequently explained to the jury that "the Commonwealth must prove beyond a reasonable doubt that [the defendant] shared the mental state or the intent of the persons, the other persons, allegedly perpetrating the crime." We conclude that the judge's instructions adequately conveyed all the requirements for conviction under a joint venture theory.[4] No reversal, therefore, is required on this ground.

Second, the defendant contends that the judge should have

---

[3]The defendant claims that he objected to the charge on this basis, but the Commonwealth maintains that the defendant only objected to the Commonwealth's request for instructions and did not raise this objection which he now seeks to raise on appeal. We do not resolve the dispute and treat the defendant's objection as though it had been raised below.

[4]The judge's statement, to which the defendant takes particular exception, that, "[i]f one is in agreement and in a position to render aid, he is an abettor even if he did not participate in the actual perpetration of the crime because his presence may have encouraged the perpetrators by giving the hope of immediate assistance," was wholly appropriate. See *Commonwealth* v. *Costa*, 407 Mass. 216, 224-225 (1990); *Commonwealth* v. *Longo*, 402 Mass. 482, 486 (1988). Similarly, her instruction that "sharing [intent] may be in a conditional sense," has consistently been approved by this court. See *Com-*

expressly instructed the jury to consider the defendant's intoxication in deciding whether he shared the requisite intent for a joint venture. The defendant clearly failed to object to the judge's instruction in this instance; therefore we review the judge's instruction only to determine whether a substantial likelihood of a miscarriage of justice has occurred. *Commonwealth* v. *Wright*, 411 Mass. 678, 681 (1992). In *Commonwealth* v. *Ferreira*, 417 Mass. 592, 596 (1994), we concluded that a judge's joint venture instructions need not mention the effect of intoxication on the defendant's ability to share the requisite intent, so long as later instructions "explicitly link[] the element of specific intent with the defendant's intoxication." See *Commonwealth* v. *Barnes*, 40 Mass. App. Ct. 666, 675-676 (1996). Here, the judge made that link. First, she correctly told the jury during her joint venture instructions that "the Commonwealth must prove beyond a reasonable doubt that [the defendant] shared the mental state or the intent of the persons, the other persons, allegedly perpetrating the crime." Soon thereafter, in discussing the intent required for deliberate premeditation, the judge instructed the jury that they could consider the defendant's "voluntary consumption of alcohol or drugs." Likewise, in explaining malice aforethought, the judge told the jury that they could "consider any evidence that you have as to the defendant's mental condition on the day in question including any impairment caused by the ingestion of alcohol or drugs." Considered together, these instructions adequately conveyed to the jury that they could consider the defendant's intoxication in determining whether he had, and shared, the requisite intent. Cf. *Commonwealth* v. *Parker*, 402 Mass. 333, 336 (1988) (error for judge to instruct jury to ignore defendant's intoxication in determining his ability to form shared intent). Consequently there was no error and therefore no substantial likelihood of a miscarriage of justice.

Third, the defendant maintains that the judge improperly instructed the jury regarding abandonment and withdrawal.[5] Specifically, he claims that, because "the evidence raised a jury question whether he had withdrawn from the joint venture appreciably before the crime was committed and that the others

---

*monwealth* v. *Clarke*, 418 Mass. 207, 216 (1994); *Commonwealth* v. *Whitehead*, 379 Mass. 640, 650 (1980).

[5]Again it is doubtful whether this claim was raised below but we pass over this question and dispose of it on the merits.

had notice of that detachment . . . a charge on withdrawal or abandonment in that regard was required." Contrary to the defendant's assertions, the judge thoroughly instructed the jury on withdrawal and abandonment. These instructions, moreover, included the warning that the withdrawal and abandonment must be "in a timely and effective manner" and that, "if [the] withdrawal comes so late that the crime cannot be stopped, then it is too late and it is not effective." The judge also stated that "a withdrawal is effective only if it is communicated to the other persons in the joint venture." There was no error.

4. *General Laws c. 278, § 33E.* Finally, the defendant requests us, pursuant to our power under G. L. c. 278, § 33E, to order a new trial or to reduce the conviction to a lesser degree of guilt. He maintains that there was insufficient evidence to support his conviction as a joint venturer. He alternatively contends that his conviction for murder in the first degree was unfair, in light of the fact that one of his coventurers pleaded guilty to murder in the second degree. After reviewing the entire record, however, we have concluded that the evidence was sufficient to convict the defendant of murder under a joint venture theory. Moreover, the undisputed brutality of this attack leaves us with little doubt that a conviction of murder in the first degree, and nothing less, was appropriate. Accordingly, we decline to exercise our power under G. L. c. 278, § 33E, to order a new trial or to reduce the conviction.

*Judgment affirmed.*